**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| *In re:* | * | |
| **ANDREW B. HUDYMA,** | * | **Case No. 20-20661 NVA** |
| **Debtor.** | * | **(Chapter 11)** |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**PLAN OF REORGANIZATION**
**PROPOSED BY THE DEBTOR**

**Robert B. Scarlett, Esquire**
**SCARLETT & CROLL, P.A.**
**201 N. Charles Street**
**Baltimore, MD. 21201**
**(410) 468-3100**
**Rscarlett@ScarlettCroll.com**

**Attorneys for the Debtor**

**THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY**
**HELP YOU DECIDE WHETHER TO ACCEPT OR REJECT**
**THE DEBTOR'S PLAN OF REORGANIZATION.**
**PLEASE READ THIS DOCUMENT WITH CARE.**

# Table of Contents

| **Description** | **Page** |
|---|---|
| Article I – Definitions | 3 |
| Article II – Dedication of Assets | 5 |
| Article III – Classification of Claims and Interest | 5 |
| Article IV – Treatment of Claims or Interests | 7 |
| Article V – Means of Execution of Plan | 18 |
| Article VI – Effect of Confirmation of the Plan | 22 |
| Article VII – Provisions for Rejection of Executory Contracts | 23 |
| Article VIII – Distribution and Unclaimed Property | 23 |
| Article IX – Special Tax Provisions | 24 |
| Article X – Injunction Against Interference of Plan and Discharge of Debtor | 24 |
| Article XI – General Provisions | 25 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| *In re:* | * | |
| **ANDREW B. HUDYMA,** | * | **Case No. 20-20661 NVA** |
| **Debtor.** | * | **(Chapter 11)** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAN OF REORGANIZATION

Andrew B. Hudyma, Debtor, by his attorneys, Robert B. Scarlett and Scarlett & Croll, P.A., hereby proposes this Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.  This Plan of Reorganization is dated August 30, 2021.

## ARTICLE I

### Definitions

The definitions and rules of construction set forth in Sections 101, 102 and 1101 of the Bankruptcy Code shall apply when the terms defined or construed therein are used in this Plan.  In addition, the following terms, when used in this Plan, shall, except if the context otherwise requires, supplement those definitions and rules.

Administrative Expenses:  Expenses and costs, including court costs and professional fees, incurred as a result of the filing by the Debtor.

Allowed Claim: A claim as defined in Section 101(5) of the Bankruptcy Code: (a) in respect of which a Proof of Claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Local Bankruptcy Rules and the Rules of Bankruptcy Procedure; or (b) which is listed in Schedule A (Statement of Liabilities of Debtor) filed by the Debtor with the

Bankruptcy Court, including any amendments thereto, and is not listed as disputed, contingent or unliquidated as to amount; and further, as to any claim, either no objection to the allowance thereof has been filed, such objection has been denied or the claim fixed as to the amount by an order of judgment which has become final by reason of the expiration of the period of appeal therefrom or from any decision on appeal without an appeal or further appeal having been taken.

Bankruptcy Code or Code:   Chapter 11 of Title 11, United States Code.

Bankruptcy Court or Court: The United States Bankruptcy Court for the District of Maryland.

Chapter 11:  Chapter 11 of the Bankruptcy Code.

Claim:  Any right to payment as defined in 11 U.S.C. Section 101(4) of the Bankruptcy Code, including, but not limited to, any and all claims arising from the rejection of executory contracts and unexpired leases of the Debtor.

Claims Objection Bar Date:   Shall be one year from the Effective Date, as defined below.

Confirmation of Plan:   The entry by this Court of an Order confirming the Plan, in accordance with Chapter 11 of the Bankruptcy Code.

Debtor: Andrew B. Hudyma.

Effective Date:  The eleventh (11th) day after an Order of Confirmation becomes final.  If the eleventh (11th) day is a Saturday, Sunday or legal holiday, the effective date shall be the next business day thereafter.

Filing Date: The date the Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code, which was later converted to a Chapter 11 bankruptcy proceeding, being December 8, 2020.

Operating Revenues: That revenue derived from the business operations of the Debtor dedicated to funding this plan.

Order of Confirmation: The Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

Plan: This Plan of Reorganization and any amendments hereto.

Priority Claims: All claims as defined by 11 U.S.C. Section 507 (a)(8).

Secured Claims: The owners of secured indebtedness holding debts, demands or claims, of whatever character, for which the owners have a security interest.

Security Interest: Any mortgage, deed of trust, chattel mortgage, judgment lien of record or consensual lien, recorded in the appropriate jurisdiction, giving the owner thereof a valid, perfected, non-preferential lien on the Debtor's real or personal property.

Tax Claims: All claims of governmental units pursuant to 11 U.S.C. Section 507(a)(7).

Unsecured Creditors: Any person or entity having a claim for which that person or entity does not have a security interest securing its claim.

## ARTICLE II

### Dedication of Assets

The Debtor hereby dedicates 100% of his income, after living expenses, toward the payment of One Hundred Percent (100%) of his creditors as set forth below.

Over the Plan's payment period, and after Confirmation of this Plan, the Debtor shall make payments according to the provisions of this Plan.

## ARTICLE III

### Classification of Claims and Interest

3.01   <u>Classification of Claims</u>

As set forth above, the Debtor's Plan of Reorganization provides for the division of the allowed claims and creditors and interest holders into thirteen (13) classes; a summary of these classes is set forth above and below:

<u>Class I</u>.          Class I claims consist of the claims for costs and expenses of Administration as defined in Section 503(b) of the Bankruptcy Code.

<u>Class II</u>.          Class II claims consist of Priority Claims allowed pursuant to Section 507 of the Bankruptcy Code, including, but not limited to, tax claims of governmental units, including the Internal Revenue Service and the Comptroller of the Treasury for the State of Maryland, but only to such extent that such claims are entitled to priority under Section 507(a)(6).

<u>Class III</u>.          Class III claims shall consist of the secured claim of MidAtlantic Farm Credit, ACA.

<u>Class IV</u>.          Class IV claims shall consist of the secured claim of 1st Financial Bank of Georgia.

<u>Class V</u>.          Class V claims shall consist of the secured claim of Truist Bank f/k/a BB&T.

<u>Class VI</u>.          Class VI claims shall consist of the secured claim of M&T Bank.

<u>Class VII</u>.          Class VII claims shall consist of the secured claim of George Teluk.

<u>Class VIII</u>.          Class VIII claims shall consist of the secured claim of Deer & Company.

<u>Class IX</u>.          Class IX claims shall consist of the secured claim of Kubota Credit Corporation.

<u>Class X</u>.          Class X claims shall consist of the secured claim of Wildcat, LLC.

Class XI        Class XI claims shall consist of the secured claim of Severn Savings Bank. LLC.

Class XII.        Class XII claims shall consist of the unsecured claim of the Internal Revenue Service.

Class XIII.        Class XIV creditors shall consist of all the allowed claims of unsecured creditors unsecured creditor.

Class XIV.        Class XIV claims shall consist of all the interests of the Debtor.


3.02    Objection to Classification.        Any holder of a Claim in who or which fails to object in writing to the classifications provided in this Plan, and to file such objection with the Bankruptcy Court and to serve such objection upon the Debtor's counsel five (5) days prior to the date first set by the Bankruptcy Court for a hearing on confirmation of the Plan, shall be deemed to have accepted such classifications and to be bound thereby.


## ARTICLE IV

### Treatment of Claims or Interests

These claims are more particularly describe below.

| Class | Creditor | Description Owed |
|---|---|---|
| I | Administrative Creditors | These creditors are currently the Debtor's attorneys, accountants and appraisers. |
| II | Taxing Creditors | This creditor is Anne Arundel County for past due property taxes. |

| III | Mid-Atlantic Farm Credit | MidAtlantic Farm Credit, ACA ("MidAtlantic") is one of the largest agricultural lending banks on the East Coast.  It is a bank dedicated to lending monies to farmers and poultry operations such as the Debtor's poultry operations.  What is unique about this financial institution is that it was created with governmental assistance to make sure there was lending for farming operations giving more favorable terms to lending to farms and poultry operations. |
|---|---|---|
| IV | 1st Financial Bank of Georgia | 1st Financial Bank of Georgia ("1st Financial") is a Delaware banking institution that lends monies for poultry operations such as the Debtor's poultry operations located in Delaware.  What is unique about 1st Financials' poultry loan is it does not get paid on a monthly basis but, instead, it is paid when the chickens sell on the property that the Debtor sells the chickens he raises that the bank maintains a security interest in.  At the time the chickens sell, 1st Financial is paid what it is due.  Thus, this payment arrangement is unique and has been a very favorable banking relationship with the Debtor.  The Debtor proposes to keep this payment system under the same under the same terms and conditions set forth in the loan documentation with one exception.  The exception is that at the time that the Debtor filed his Bankruptcy Petition, there were some monies owed to the creditor. |
| V | Truist Bank | Truist Bank, formerly known as BB&T, has lent to a building with an appraised value of $1,082,000.   The building is security for Truist Bank's loan is generally a small building that can accommodate entities renting out the building for commercial activities.  It is significant that the property fronts Richie Highway, a busy highway.  At this time, the Debtor has no renters in the building but projects to be able to gradually fill the building with renters.  The Debtor believes that the COVID epidemic had an effect on the building not being able to be rented before the bankruptcy proceeding. |

| VI | M&T Bank | M&T Bank has lent to the Debtor on a commercial building with two leases. Pursuant to the Cash Collateral Order the Debtor has been paying to this Bank the rentals from these leases.   The building collateralizes M&T Bank's loan is generally a small building that can accommodate entities renting out the building for commercial activities.   The Debtor believes that the COVID epidemic had an effect on the building not being able to be rented before the bankruptcy proceeding. |
|---|---|---|
| VII | George Teluk | George Teluk is an individual and secured creditor who sold his rowhome to the Debtor (the "Property").   Even though the Bankruptcy Court did not lift the Automatic Stay pursuant to a Motion to Lift the Automatic filed by this creditor, the Bankruptcy Court did note at the lift stay hearing that this creditor was a small creditor compared to all of the commercial loans' worth around $7,860,708. The Court also noted that the creditor is over 80 years old and is dependent upon the monies generated for his retirement income from the Debtor's commitment to pay this creditor.  Given the Court's comments, this creditor will receive the following from the Debtor. |
| VIII | John Deer & Company. | John Deer & Company is another small creditor of the Debtor which sold and financed a farm tractor to the Debtor. In computing how much to pay to satisfy the debt due on the tractor, the Debtor has accounted for the fact that the tractor has significantly depreciated in value. |
| VIX | Kubota Credit Corporation | Kubota Credit Corporation financed a farm tractor to the Debtor. In computing how much to pay to satisfy the debt due on the tractor, the Debtor has accounted for the fact that the tractor has significantly depreciated in value. |
| X | Wildcat, LLC | Wildcat, LLC is a small, secured creditor of the Debtor who is still owed a small amount of monies on a property which secures the debt. |
| XI | Severn Savings & Loan | The Class XI claim shall consist of the secured claim of Severn Savings Bank. Severn Savings Bank is a local Annapolis banking institution. Severn Savings Bank lent money on a commercial piece of property in Salisbury, Maryland in a manner that is an ordinary commercial loan. |
| XII | Internal Revenue Service | The Internal Revenue Service is an unsecured tax debt owed by the Debtor and his wife.  Pursuant to the Bankruptcy Code's "Absolute Priority Rule", as more particularly described below, this creditor will be paid in full but after the priority creditors have been paid in full.

Since the Debtor projects that his wife equally owes the tax debt, the Debtor projects that his wife will try to enter into a separate |

| | | |
|---|---|---|
| | | agreement with the Internal Revenue Service for payments over six years or more. Given that the Debtor's wife has sufficient income to make such payments, the Debtor projects that this debt will be significantly reduced by the time the Debtor will have to make payments on this unsecured debt. The Debtor's wife is not obligated to enter into such an agreement with the IRS, however, this information is provided in this Disclosure Statement to provide the Debtor's creditors information on this debt. |
| XIII | Unsecured Creditors | The Debtor's unsecured creditors, except for the Internal Revenue Service, did not represent a significant portion of the debt owed. |
| XIV | The Debtor | The Class XIV claims shall consist of all the interests of the Debtor. After the full payment to all of the Debtor's creditors, the Debtor's property will revest back to the Debtor. |

The Plan provides that the aforesaid creditors shall be treated and paid as follows:

Class I.    Administrative Class I creditors shall be paid in full and in cash as and when their claims are allowed to be paid by Order of this Court or in accordance with such agreements or arrangements as may be made between the Debtor and holders of Class I claims. Pursuant to Section 1123(a)(2) of the Bankruptcy Code, Class I creditors are not a class of claims which are impaired under the Plan within the meaning of Section 1124 and are deemed to accept the Plan under Section 1126(f). **This class of creditors is not impaired under the Provisions of the Plan.**

Class II.    The Debtor's Class II priority creditors shall be paid their Priority Claims in full and in cash over a six (6) year term in quarterly installments, from the Debtor, after payment by the Debtor from the Escrow Account or from other assets of the Debtor of his Class I Administrative Creditors. The Class II priority tax creditors shall receive, on account of their claims, deferred cash payments in twenty-four (24) quarterly installments, with the first quarterly installment due within thirty (30) days following the date of Confirmation of this Plan or the 1st day of the month, following fifteen (15) days after the Order of Confirmation of the Plan by the Bankruptcy Court is approved, whichever date shall occur to be later. The holder of each such

claim shall receive such deferred cash payments over a period of six (6) years in the amount equal to their Allowed Claim, plus simple interest at a rate of nine percent (4.25%) per annum.  Pursuant to Section 1123(a)(2) of the Bankruptcy Code, Class II Priority Creditors are not a class of claims which are impaired under the Plan within the meaning of Section 1124 and are deemed to accept the Plan under Section 1126(f).  **This class of creditors is not impaired under the Provisions of the Plan.**

 <u>Class III</u>. Class III claims shall consist of the secured claim of MidAtlantic Farm Credit, ACA.  **This class of creditors is impaired under the Provisions of the Plan.**

 MidAtlantic Farm Credit, ACA ("MidAtlantic") is one of the largest agricultural lending banks on the East Coast.  It is a bank dedicated to lending monies to farmers and poultry operations such as the Debtor's poultry operations.  What is unique about this financial institution is that it was created with governmental assistance to make sure there was lending for farming operations giving more favorable terms to lending to farms and poultry operations.

 Given the uniqueness of this financial institution, its loan would be modified as follows:

| **Description of Collateral** | **Value of Collateral** | **Amount Due** | **Payment Terms** |
|---|---|---|---|
| | | | |
| 37424 Millsboro Highway, Laurel, DE<br><br>19956 Sussex County<br><br>0 Wascena Circle, Anne Arundel County<br><br>8002 Green Lewis Road, Willards, MD<br><br>17421 Redhill Road, Accomack, VA | $3,200,000 | $2,180,176.35 | Interest Rate – 4.25%<br>Amortization Time Period – 20 years<br>Monthly Payment – $13,500.00<br>Maturity Date – 15 years from Confirmation |

| | | | |
|---|---|---|---|
| 23420 Accomack County<br>1 Seaside Road, Painters, Va<br><br>32542 Seaside Road<br><br>8002 Green Lewis Road, Ocean City, MD | | | |
| | | | |

<u>Class IV</u>.        Class IV claims shall consist of the secured claim of 1st Financial Bank of Georgia.  **This class of creditors is impaired under the Provisions of the Plan.**

1st Financial Bank of Georgia ("1st Financial") is a Delaware banking institution that lends monies for poultry operations such as the Debtor's poultry operations located in Delaware.  What is unique about 1st Financials' poultry loan is it does not get paid on a monthly basis but, instead, it is paid when the chickens sell on the property that the Debtor sells the chickens, he raises that the bank maintains a security interest in.  At the time the chickens sell, 1st Financial is paid what it is due.  Thus, this payment arrangement is unique and has been a very favorable banking relationship with the Debtor.  The Debtor proposes to keep this payment system under the same under the same terms and conditions set forth in the loan documentation with one exception.  The exception is that at the time that the Debtor filed his Bankruptcy Petition, there were some monies owed to the creditor.  The amount owed at that time will be treated as a pre-petition loan and will be paid as follows:

| **Description of Collateral** | **Value of Collateral** | **Amount Due** | **Payment Terms** |
|---|---|---|---|
| | | | |
| 3137 Woodyard Road, Harrington, DE 19952 | $5,900,000 | $3,100,090 with amount due as of the date of the | Interest Rate – 4.25%<br>Amortization Time Period – 20 years<br>Monthly Payment – $Unknow at this time<br>Maturity Date – 15 years from Confirmation |

| | | bankruptcy filing - unknown | or payments will continue in the same manner, if no information is provided. |
|---|---|---|---|
| | | | |

Class V.    Class V claims shall consist of the secured claim of Truist Bank f/k/a BB&T. **This class of creditors is impaired under the Provisions of the Plan.**

Truist Bank, formerly known as BB&T, has lent to a building with an appraised value of $1,082,000.   The building is security for Truist Bank's loan is generally a small building that can accommodate entities renting out the building for commercial activities.  It is significant that the property fronts Richie Highway, a busy highway.  At this time, the Debtor has no renters in the building but projects to be able to gradually fill the building with renters.  The Debtor believes that the COVID epidemic had an effect on the building not being able to be rented before the bankruptcy proceeding.

This is more of a normal commercial business loan therefore the Debtor proposes the following modifications to the loan:

| **Description of Collateral** | **Value of Collateral** | **Amount Due** | **Payment Terms** |
|---|---|---|---|
| | | | |
| 8213 Ritchie Highway Severna Park, MD 21804 | $1,082,000 | $529,630.63 | Interest Rate – 4.25% Amortization Time Period – 20 years Monthly Payment – $3,279.65 Maturity Date – 15 years from Confirmation |
| | | | |

Class VI.    Class VI claims shall consist of the secured claim of M&T Bank. **This class of creditors is impaired under the Provisions of the Plan.**

M&T Bank has lent to the Debtor on a commercial building with two leases. Pursuant to the Cash Collateral Order the Debtor has been paying to this Bank the rentals from these leases. The building collateralizes M&T Bank's loan is generally a small building that can accommodate entities renting out the building for commercial activities. The Debtor believes that the COVID epidemic had an effect on the building not being able to be rented before the bankruptcy proceeding.

This is more of a normal commercial business loan therefore the Debtor proposes the following modifications to the loan:

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| 6 Ritchie Highway Pasadena, Maryland | $2,500,000 | $1,360,861.54 | Interest Rate – 4.25% Amortization Time Period – 20 years Monthly Payment – $8,426.92 Maturity Date – 12 years from Confirmation |
| | | | |

Class VII.    Class VII claims shall consist of the secured claim of George Teluk. **This class of creditors is impaired under the Provisions of the Plan.**

George Teluk is an individual who sold his rowhome to the Debtor (the "Property"). Even though the Bankruptcy Court did not lift the Automatic Stay pursuant to a Motion to Lift the Automatic filed by this creditor, the Bankruptcy Court did note at the lift stay hearing that this creditor was a small creditor compared to all of the commercial loans' worth around $7,860,708. The Court also noted that the creditor is over 80 years old and is dependent upon the monies generated for his retirement income from the Debtor's commitment to pay this creditor. Given the Court's comments, this creditor will receive the following from the Debtor.

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| 504 S. Washington, Baltimore, Maryland in a completed manner for $260,000 | $260,000 | $83,762.78 | Interest Rate – 4.25% Amortization Time Period – 4 years Monthly Payment - $1,900.25 Maturity Date – 2 years from Confirmation |
| | | | |

Class VIII.    Class VIII claims shall consist of the secured claim of Deer & Company. **This class of creditors is impaired under the Provisions of the Plan.**

Deer & Company is another small creditor of the Debtor.  Given the small nature of collateral as being a tractor and the fact that such tractors depreciate at a faster level, the Debtor shall treat this creditor as follows:

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| John Deer Tractor | $9,000.00 | $8,741.96 with amount due as of the date of the bankruptcy filing - unknown | Interest Rate – 4.25% Amortization Time Period – 20 years Monthly Payment – $54.00 Maturity Date – 5 years from Confirmation |
| | | | |

Class IX.    Class IX claims shall consist of the secured claim of Kubota Credit Corporation. **This class of creditors is impaired under the Provisions of the Plan.**

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| Kubota Tractor | $58,000.00 | $51,308.24 | Interest Rate – 4.25% Amortization Time Period – 20 years |

| | | | |
|---|---|---|---|
| | | | Monthly Payment – $317.72<br>Maturity Date – 5 years from Confirmation |
| | | | |

Class X.       Class X claims shall consist of the secured claim of Wildcat, LLC. **This class of creditors is impaired under the Provisions of the Plan.**

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| 0 Wasena Ave. | $9,500.00 | $3,622 | Interest Rate – 4.25%<br>Amortization Time Period – 5 years<br>Monthly Payment – $22.43<br>Maturity Date – 3 years from Confirmation |
| | | | |

Class XI       Class XI claims shall consist of the secured claim of Severn Savings Bank. Severn Savings Bank is a local Annapolis banking institution.  Severn Savings Bank lent money on a commercial piece of property in Salisbury, Maryland in a manner that is an ordinary commercial loan.  In that it is only owed the amount set forth below, this will be treated as a small loan and amortized accordingly. **This class of creditors is impaired under the Provisions of the Plan.**

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| 32057 Beaver Run Drive, Salisbury. MD | $500,000 | $88,518.33 | Interest Rate – 4.25%<br>Amortization Time Period – 20 years<br>Monthly Payment – $548.13<br>Maturity Date – 5 years from Confirmation |
| | | | |

Class XII.    Class XII claims shall consist of the unsecured claim of the Internal Revenue Service. **This class of creditors is impaired under the Provisions of the Plan.**

| Description of Collateral | Value of Collateral | Amount Due | Payment Terms |
|---|---|---|---|
| | | | |
| | $0 | $418,473.86 | Interest Rate – 4.25%<br>Amortization Time Period – 20 years<br>Monthly Payment – $2,591.33<br>Maturity Date – 6 years from Confirmation |
| | | | |

Class XIII.    Class XIII claims shall consist of all the allowed claims of the Debtor's *Di Minimus* Class of unsecured creditors of the Debtor pursuant to 11 U.S.C. §122(b).  They will receive 90% of the amount owed or they can elect to be a Class XIV unsecured creditor and receive 100% of the amount owed within three (3) months from the date of confirmation. **This class of creditors is impaired under the Provisions of the Plan.**

Class XIV.    Class XIV creditors shall consist of all the allowed claims of unsecured creditors, and those unsecured *Di Minimus* class of creditors who elect to be a Class XIII unsecured creditor.  These creditors shall receive on monthly basis payment of their claims over a period of One (1) year. **This class of creditors is not impaired under the Provisions of the Plan.**

Class XV.    Class XV claims shall consist of all the interests of the Debtor.  After the full payment to all of the Debtor's creditors, the Debtor's property will revest back to the Debtor. **This class of creditors is impaired under the Provisions of the Plan but cannot vote for the Plan.**

4.02    After the confirmation of the Plan, the Debtor shall pay the reasonable fees and expenses incurred by his administrative creditors, including, but not limited to, his professionals and attorneys in connection with the consummation of the Plan and the performance of any duties

or obligations necessary or appropriate in connection with this Chapter 11 proceeding in the ordinary course of business without further order of the Court. Notwithstanding the foregoing, the Court shall retain jurisdiction to resolve any dispute regarding post Effective Date administrative claims incurred prior to the closing of this case. The Debtor shall also pay to the United States Trustee all Fees owed and allowed under 28 U.S.C. § 1930 during this Chapter 11 proceeding at the time such payments are due.

<u>ARTICLE V</u>

<u>Means of Execution of Plan</u>

5.01     The Debtor has instituted certain operational changes in his business which has led to a positive increase in his cash flow. These changes are projected to continue to increase the Debtor's cash flow in a manner which will permit the Debtor to fund, pursuant to this Plan, this Plan and the Distribution Escrow Account. This increased positive cash flow has been accomplished through several means but primarily through increased attention to the Debtor's general operational expenses combined with a greater sensitivity to those events which particularly attract the Debtor's clientele. The Debtor also believes, as set forth in the Debtor's Disclosure Statement, that he will be able to obtain more leases for his commercial properties and will be able to obtain in a few months a  company or integrator to operate some of his poultry houses, increasing his income.

The Debtor has already begun to make adequate protection payments to reflect the Plan requirements. The Debtor shall be responsible for making the payments to his creditors, according to the priority set forth above and pursuant to the terms and conditions of this Plan.

5.02    The Debtor shall pay his creditors from the following sources: (a) proceeds from liquidation of-non-exempt assets, (b) excess cash flows projected from the Debtor's business operations and (c) the collection of funds from potential legal proceedings such as proceedings filed in the Bankruptcy Court to recover preference payments.

5.03    The first distribution shall be made on the first of the month after thirty (30) days from the date the Plan is confirmed by the Bankruptcy Court.  To the extent that claims are disputed, the Debtor shall reserve funds until such time as such disputed claims are allowed or disallowed by order which has become final.  If a disputed Claim is allowed by a final order, such holder shall be paid its initial distribution within thirty (30) days after the Claim becomes an Allowed Claim.

5.04    The Debtor shall continue to employ himself.  The appointment to or continuance of the Debtor's involvement in the Debtor's business are consistent with the interests of creditors and with public policy.

5.05    The Debtor shall employ himself and an insider.

5.06    Continuing Operations.        The Debtor shall continue to operate his business and conduct his affairs as an ongoing business.

5.07    Objections.        All objections to Claims shall be filed by the Claims Objection Date or shall be forever barred.  Notwithstanding anything herein to the contrary, no payment shall be made on account of any Disputed Claim unless and until a Final Order has entered thereon.  If a payment comes due on a Disputed Claim and no Final Order has been entered on an objection filed to that Disputed Claim, the Debtor may reserve the distribution to the Disputed Claim pending determination of the Disputed Claim(s) by this Court.

5.08   <u>Cram Down</u>.   In the event that any Class of Claims is deemed impaired under this Plan and refuses to accept the terms of this Plan, the Debtor will move the Bankruptcy Court to confirm this Plan pursuant to Bankruptcy Code § 1129(b), which sets forth the so-called "cram-down" provisions of the Code.   Under § 1129(b), a plan which has not been accepted by all impaired classes may be confirmed by the Bankruptcy Court so long as at least one impaired class has accepted the Plan, and the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of impaired claims or interests.

5.09   <u>Disputed Claims</u>.

(a)   No distribution or other payment or treatment shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.   No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

(b)   As to any Disputed Claim for which a Proof of Claim has been filed in an unliquidated amount, the Bankruptcy Court shall, upon motion by the Reorganized Debtor to be filed on or before Claims Objection Bar Date, estimate the maximum allowable amount of such Disputed Claim under § 502(c) of the Bankruptcy Code.   Any Final Order of the Bankruptcy Court that estimates a Disputed Claim irrevocably shall constitute and be a conclusive and final determination of the amount of the Allowed Claim of such Creditor.   A Creditor whose Disputed Claim is estimated by the Bankruptcy Court shall not be entitled to any subsequent reconsideration or adjustment as a result of any subsequent adjudication or actual determination of the amount of the Claim, or otherwise, and the Creditor shall not have recourse to the Debtor, the Reorganized Debtor or any Assets, in the event the actual amount of the Creditor's Claim is at any time later determined to exceed the estimated amount.

(c)     With respect to a Disputed Claim that later becomes an Allowed Claim, the Reorganized Debtor shall pay from the reserve account directly to the Holder of such Disputed Claim, an amount equal to such Holder's Pro Rata Share of any distribution made to date to other holders of Claims in that Class.

5.10    <u>Bar Date for Objections to Claims and Interests</u>.     Unless an earlier time is set by Final Order of the Bankruptcy Court, all objections to Claims or Interests must be filed with the Bankruptcy Court by the Claims Objection Bar Date.  The failure by any party in interest, including the Debtor, to object to any Claim or Interest, whether or not unpaid, for purposes of voting shall not be deemed a waiver of such party's rights to object to, or re-examine, any such Claim or Interest, as applicable, in whole or in part.

5.11    <u>Disbursement of Funds</u>.     The Debtor shall make all distributions of cash required under the Plan.

5.12    <u>Direction to Parties</u>.   From and after the Effective Date, the Debtor may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to allow a transfer of property required under the Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan, pursuant to Bankruptcy Code § 1142(b).

5.13    <u>Setoffs</u>.     The Debtor shall, to the extent permitted under applicable law, setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, the claims, rights and causes of action of any nature (other than preference claims) that the Debtor may hold against the Holder of such Allowed Claim which are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither

such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor possess against such Holder.

## ARTICLE VI

### Effect of Confirmation of the Plan

6.01    Upon the entry of a Confirmation Order, all of the property of the Debtor's bankruptcy estate, except assets comprising the Distribution Escrow Account shall be vested in the Debtor.  Except as provided in the Plan, all such property shall be free and clear of all claims and interests of creditors.  The Debtor shall be entitled to manage his affairs without further order of the Court, and he shall be discharged from all of his debts except as provided in the Plan.

6.02    All professionals engaged by the Debtor to perform work for the Debtor after the Confirmation Date of the Plan may be compensated by the Debtor without prior Court approval.

6.03    Upon the entry of a Confirmation Order, the provisions of the Plan bind the Debtor and any creditor, whether or not the claim or interest of such creditor is impaired under the Plan, and whether or not such creditor has accepted the Plan.

6.04    Upon the entry of a Confirmation Order, and except as provided in the Plan, the Debtor is discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) such claim is allowed under Section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan.

6.05    The Order of Confirmation shall act as a discharge of the Debtor from all obligations other than those provided for in this Plan.

## ARTICLE VII

## Provisions for Rejection of Executory Contracts

7.01    All Executory Contracts of the Debtor which are not expressly assumed prior to the Confirmation of the Plan, or for which an application to assume is not pending at the time of Confirmation, shall be deemed to be rejected by the Debtor.

## ARTICLE VIII

## Distribution and Unclaimed Property

8.01    Except as set forth in Paragraph 8.02, any funds to be distributed to holders of Allowed Claims that remain unclaimed by such claimants six (6) months after disbursement shall be considered an abandoned claim (hereinafter referred to as "Abandoned Claims") and shall become property of the Debtor's Estate and held by the Debtor for the benefit of the Debtor's creditors.  Such funds will then be distributed pursuant to the provisions of this Plan to the holders of Allowed Claims ("Holders") as if such Abandoned Claims had not been filed and did not exist.

8.02    If check(s) distributed on Allowed Claims remain uncashed upon the final distribution, and such check(s), in the aggregate, total less than Five Hundred Dollars ($500.00), such payment shall become property of the Debtor and shall not be distributed to the Debtor's creditors.

8.03    Distributions to Holders of Allowed Claims shall be made:  (1) at the address set forth on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written notices of address change delivered to the Debtor or the Reorganized Debtor after the date of any related Proof of Claim; or (3) at the address reflected in the Debtor's Schedules of Assets

and Liabilities if no Proof of Claim has been filed and the Debtor and the Reorganized Debtor has not received a written notice of a change of address.

8.04    If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then current address. Undeliverable distributions shall be held by the Reorganized Debtor until such time as a distribution becomes deliverable pursuant to the provisions set forth in this Plan.

8.05    Any Holder of an Allowed Claim who does not assert a Claim for an undeliverable distribution within six (6) months after the commencement of distribution to the applicable Class shall no longer have any claim to or interest in such undeliverable distribution and shall be forever barred from receiving any distribution under the Plan and such amount shall be distributed in accordance with the terms of the Plan.

ARTICLE IX

Special Tax Provisions

9.01    Any transfer or sale of any property of the Bankruptcy Estate, including real property, shall be made pursuant to the special tax provisions set forth in the Bankruptcy Code, Section 1146(a), which sets forth that the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code may not be taxed under any law imposing a stamp tax or similar tax.

ARTICLE X

Injunction Against Interference of Plan
And Discharge of Debtor

10.1    <u>No Interference</u>.    No person or creditor will be permitted to commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the Plan or the payments required to be made hereunder.

10.2    <u>Injunction</u>.    The Confirmation of the Plan will satisfy all Claims or causes of action arising out of any Claim addressed by the terms of the Plan and will operate, for any creditor who has voted for this Plan, as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of Debtor and/or the Debtor's wife, except as provided in the Plan.  This injunction shall continue after the Plan has been completed and funded.  This injunction shall also apply to (i) from commencing or continuing, in any manner, any action or other proceeding of any kind based upon, arising or deriving from any claim against the Debtor or the Debtor's wife, against or their respective officers, directors, employees, agents, representatives, financial advisors or attorneys (collectively referred to as the "Agents"), (ii) from enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against the Debtor or the Agents, based upon, arising or deriving from any claim against the Debtor or the Agents, (iii) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Agents, based upon, arising or deriving from any claim against the Debtor or the Agents, (iv) from asserting against the Debtor or the Agents, any set-offs, right of subrogation, or recoupment against any obligation based upon, arising or deriving from any claim against the Debtor; and (v) from performing any act based upon, arising or deriving from any claim against the Debtor, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

<u>ARTICLE XI</u>

### General Provisions

11.01   The Debtor may modify this Plan at any time before the Confirmation of this Plan by the Bankruptcy Court but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become the Plan.

11.02   The Debtor may modify this Plan at any time after the confirmation of, or substantial consummation of, this Plan, but the Debtor may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under these subsections, shall become the Plan only if the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, pursuant to Section 1129 of the Bankruptcy Code; in addition, the circumstances must warrant such a modification.

11.03   Before or after Confirmation, or in the Order of Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of the creditors, remedy any defect or admission, or reconcile any inconsistencies in the Plan or amend the Plan in such a manner as may be necessary to carry out the purposes and effect of the Plan.

11.04   All creditors shall waive all interest on unsecured loans, late charges, penalties, attorney's fees, court costs and other charges of any kind not expressly set forth in this Plan.

11.05   Except for those creditors holding secured claims, which shall be governed by those provisions of this Plan dealing with the respective secured creditor, if any party-in-interest fails to receive the payment as provided under the Plan or questions the Debtor's compliance with the Plan in any way, such party shall provide the Debtor and the Debtor's undersigned attorneys with

written notice thereof by certified mail, return receipt requested, and the Debtor may cure such non-compliance, if any, within thirty (30) days from receipt of such notice.

11.06    The Court shall retain jurisdiction, after Confirmation of the Plan, until completion of all provisions of this Plan, to ensure the purposes and intent of the Plan are carried out. The Court shall retain jurisdiction herein to determine all claims against the Debtor, all disputes and litigation pending at the time of Confirmation of the Plan and any controversies which may arise and affect the Debtor's ability to carry out this Plan, until such disputes and litigation shall be concluded as set forth below, including, but not limited to:

1.    Determining all valid liens and claims and amounts against the Debtor and his property;

2.    Allowing the Debtor to enforce any claim or cause of action or causes of action which exists in his favor and which may not have been previously enforced by the Debtor;

3.    Settling any disputes between the Debtor and his creditors;

4.    Continuing to maintain jurisdiction and to stay enforcement of any liens or claims against the Debtor until Confirmation of this Plan;

5.    Allowing the Debtor the rights and powers as a Debtor-in-Possession which includes the rights and power of a Trustee under the Bankruptcy Code, existing in favor of a Debtor-in-Possession before confirmation, to enforce causes of action which may not have been previously enforced or prosecuted herein by the Debtor, as Debtor-in-Possession, and allowing the Debtor to reserve all of those rights and powers held by it as a Debtor-in-Possession before Confirmation;

6.    Approving or confirming a modification of this Plan after confirmation proposed by the Debtor, and granting moratoria and extensions to the payments required under the

Plan to the Debtor's creditors in any of the Classes set out above for any reasonable period of time due to circumstances presently unforeseeable; and

       7.     Retaining such other jurisdiction as will ensure that the intents and purposes of this Plan are fulfilled.

11.07  All claims and causes of action in favor of the Debtor are hereby reserved and retained to be prosecuted before and after Confirmation, and the Debtor expressly reserves any rights and powers it may enjoy as a Debtor-in-Possession to be utilized after Confirmation.

11.08  Upon *ex parte* application for good cause, this Court may (and reserves jurisdiction to) grant moratoria and payments to creditors in any of the classes set out above for any reasonable period of time due to circumstances presently unforeseeable.  The Plan is not intended to be aborted, or this case dismissed or converted to a Chapter 7 (straight Bankruptcy) if payments are not timely made where moratoria or extensions can and should be granted by this Court for reasonable causes.  "Good cause" shall not exist under this paragraph where defaults in payments are deemed "substantial" by the Court so as to constitute an "event of default".

11.09  Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after creditors in said Classes have had their claims fully fixed and allowed by the Court.  However, objection(s) to any one Class will not preclude distribution to creditors in another Class, where there are no disputes regarding claims in said other Class.

11.10  Notwithstanding anything contained hereinabove, the Debtor reserves the right to object and/or defend against any and all claims herein.

11.11  Notwithstanding anything contained hereinabove, the Debtor may prepay any payment or installment under this Plan without penalty.

11.12   With respect to any dates established by this Plan for the distribution of the Debtor's funds or assets, the Debtor may file, before the distribution date, a Notice of Proposed Distribution with the Bankruptcy Court and provide the Debtor's creditors notice and an opportunity for a hearing to object to any proposed distribution to be made by the Debtor.  If no objections to the Notice are filed, the Debtor's creditors will have been considered to have consented to and approved of the proposed distribution to be made by the Debtor.  If such a Notice is filed, the distribution of the funds or assets by the Debtor shall not be required to occur until thirty (30) days after the Notice period elapses or, if an objection is filed, thirty (30) days after the Bankruptcy Court enters a final non-appealable Order approving or modifying the proposed distribution, or until the time period set forth by this Plan, whichever date occurs later.

11.13   It shall be each of the Debtors creditors' individual responsibility to maintain with the Bankruptcy Court, the Debtor and the Debtor's attorneys an accurate record of their current mailing address.  If a creditor changes its address, said creditor shall notify, in writing, the Bankruptcy Court, the Debtor and the Debtor's attorneys of the change in address.  If the notification requirements of this paragraph are not complied with, the creditor or party-in-interest not complying with the requirements of this paragraph shall assume all of the risks of not receiving any share of any distribution made pursuant to the provisions of this Plan, and the Debtor shall not be responsible for or liable to said creditor or party-in-interest for any amounts to be distributed.

11.14   As long as the Debtor remains in compliance with the provisions set forth in this Plan and any order confirming this Plan as those provisions deal with the repayment of the claim owed by the Debtor to his creditors, his creditors shall not be permitted to proceed and is enjoined from proceeding against any guarantor, endorser or surety for debt owed by the Debtor.

11.15   The confirmation of this Plan will constitute a finding of fact and conclusion of law by this court that the Debtor is entitled to discharge pursuant to 11 U.S.C. § 727 and 1141, and that none of the debts are excepted from discharge under 11 U.S.C. § 523.  No hearing on the Debtor's discharge or dischargability of any debts shall be required after confirmation.  Pursuant to 11 U.S.C. §1141, the Debtor will be discharged and released of any and all debts and liabilities.

11.16   The Order of Confirmation of the Plan issued by the Bankruptcy Court shall void all liens on the Debtor's exempted property.

11.17   To the extent the terms of the Plan are inconsistent with the Debtor's Disclosure Statement, the terms of the Plan shall control.

Dated: August 30, 2021

/s/ Andrew B. Hudyma
Andrew B. Hudyma

Submitted by:

/s/ Robert B. Scarlett
Robert B. Scarlett
Federal Bar No. 01424

SCARLETT & CROLL, P.A.
201 N. Charles Street, Suite 600
Baltimore, Maryland 21201
RScarlett@ScarlettCroll.com
(410) 468-3100
(410) 332-4026 (fax)

*Attorneys for the Debtor*

## Certificate of Service

I HEREBY CERTIFY that on this 30th day of August, 2021, I caused a copy of the above to be sent via electronic mail per CM/ECF guidelines to:

**Electronic Mail Notice List** - Parties in the case only

- **Herbert Burgunder**    hb3@pklaw.com
- **Richard L. Costella**    rcostella@tydings.com, jmurphy@tydings.com
- **Andrew Martin Croll**    amcroll@scarlettcroll.com, krynarzewski@scarlettcroll.com;crollar64434@notify.bestcase.com
- **Richard A. DuBose**    rdubo@gebsmith.com
- **Jessica Hepburn-Sadler**    sadlerjh@ballardspahr.com, andersonn@ballardspahr.com
- **Katherine A. (UST) Levin**    Katherine.A.Levin@usdoj.gov, amy.busch@usdoj.gov
- **Keith M. Lusby**    klusby@gebsmith.com
- **John D. Sadler**    sadlerj@ballardspahr.com, andersonn@ballardspahr.com;LitDocket_East@ballardspahr.com
- **Robert B. Scarlett**    RScarlett@ScarlettCroll.com, krynarzewski@scarlettcroll.com;mmyers@scarlettcroll.com;scarlettrr64434@notify.bestcase.com
- **US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV
- **Jonathan M. Wall**    jwall@hwlaw.com, mshipley@hwlaw.com;cgay@hwlaw.com;lhendricks@hwlaw.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Hugh D. Blocker**
Hugh D. Blocker, CPA
Suite 23
2411 Crofton Lane
Crofton, MD 21114

**Deere & Company, d/b/a John Deere Financial**
c/o Scott Fink

Agent for Creditor
965 Keynote Circle
Brooklyn Heights, OH 44131

**Charles L Ford**
Charles L. Ford, Inc.
347 Prestonfield Lane
Severna Park, MD 21146

**Synchrony Bank**
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Thomas A. Weigand**
Treffer Appraisal Group
1244 Ritchie Highway Ste. 19
Arnold, MD 21012

and those creditors on the attached matrix.

/s/ Robert B. Scarlett
Robert B. Scarlett
Federal Bar No. 01424

State of Maryland DLLR
Division of Unemployment Insurance
1100 N. Eutaw Street, Room 401
Baltimore, MD  21201-2225

U.S. Attorney – District of MD
36 S. Charles Street, 4th Floor
Baltimore, MD  21201-3020

Wildcat, LLC
c/o KMA Law Office
540 Ritchie Hwy, Ste. 201
Severna Park, MD  21146-2927

Yvette Hudmay
8157 Solomons Crossing Court
Millersville, MD  21108-1207

Andrew B. Hudyma
8157 Solomons Crossing Court
Millersville, MD  21108-1207

George Teluk
605 South Patterson Park
Baltimore, MD  21231-3215

Deere and Company
c/o Scott Fink, Agent for Creditor
965 Keynote Circle
Brooklyn Heights, OH  44131-1829

Synchrony Bank
c/o PRA Receivables Management, LLC
P.O. Box. 41021
Norfolk, VA  23541-1021

1st Financial Bank of Georgia
4239 Mundy Road
Oakwood, GA  30566

Truist Bank
7220 Wisconsin Avenue, 4th Floor
Glen Burnie, MD  21060

American Express, NA
c/o Becket and Lee LLP
P.O. Box. 3001
Malvern, PA  19355-0701

Comcast
P.O. Box 1931
Burlingame, CA  94011-1931

Deere & Company
c/o Weltman, Weinberg & Reis Co., LPA
P.O. Box 93784
Cleveland, OH  44101-5784

George Teluk
Herbert Burgunder III, Esq, Rimon P.C.
1501 Sulgrave Avenue, Ste. 311
Baltimore, MD  21209-3654

Keith Lusby, Esquire
Gebhart & Smith
1 South Street, Ste. 2200
Baltimore, MD  21202-3281

MidAtlantic Farm Credit, ACA
c/o Richard L. Costella
Tydings & Rosenberg, LLP
One East Pratt Street, Ste. 901
Baltimore, MD  21202-1249

Truist Bank
Ballard Spahr LLP
c/o John D. Sadler
1909 K Street NW, 12th Floor
Washington, DC  20006-1152

8002 Green Lewis Road
Willards, MD  21874-1292

Anne Arundel County, Maryland
Office of Law
2660 Riva Road, 4th Floor
Annapolis, MD  21401-7055

Capital One, N.A.
4515 N. Santa Fe Avenue
Oklahoma City, Ok 73118-7901

Department of Treasury
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA  19101-7346

Kubota Credit Corporation
100 Kobota Drive
Grapevine, TX  76051

Severn Bank
Hyatt & Weber, P.A.
c/o Jonathan Wall, Esquire
200 Westgate Circle, Ste. 500
Annapolis, MD  21401-3374

US Trustee – Baltimore 11
Garmatz Federal Courthouse
101 West Lombard Street, Ste. 2625
Baltimore, MD 21201-2668

Alexis E. Kramer, Esquire
Ewing, Dietz, Fountain & Kaludis
16 South Washington Street
Easton, MD  21601-3008

US Securities and Exchange
Atlanta Reg. Office
950 E. Paces Ferry Rd, NE, Ste. 900
Atlanta, GA  30326-1382

Comptroller of Maryland
Bankruptcy Unit
301 W. Preston Street, Rm. 312
Baltimore, MD 21201-2396

George Teluk
624 South Patterson Avenue
Baltimore, MD  21224

John and Jessica Sadler
Ballard Spahr LLC
1909 K Spahr, LLC, 12th Floor
Washington, DC  20006

Kubota Credit Corporation
P.O. Box 9013
Addison, TX  75001-9013

M&T Bank
1 M&T Plaza, 8th Floor
Buffalo, NY  14203

MidAtlantic Farm Credit, ACA
45 Aileron Court
Westminster, MD  21157-3022

M&T Bank
Legal Document Processing
626 Commerce Drive
Amherst, NY  14228-2307

Secretary of the Treasury
15 & Pennsylvania Avenue
Washington, DC  20220-0001

MidAtlantic Farm Credit
1614 E. Churchville Road, Ste. 102
Bel Air, MD  21015-2052

Severn Savings Bank

200 West Gate Circle

Annapolis, MD  21401-3373

Hugh D. Blocker
Hugh D. Blocker, CPA
2411 Crofton Lane, Ste. 23
Crofton, MD  21114

Charles L. Ford
Charles L. Ford, Inc.
347 Prestonfield Lane
Severna Park, MD  21146

Thomas A. Weigand
Treffer Appraisal Group
1244 Ritchie Highway, Ste. 19
Arnold, MD  21012

{00239899.DOC.1}